W. Sale LEWIS and Savings and Loan Commissioner of Texas et al., Appellants,

v.

John R. McCLELLAND et al., Appellees.

No. 12085.

Court of Civil Appeals of Texas, Austin.

Nov. 28, 1973.

Rehearing Denied Jan. 2, 1974.

John L. Hill, Atty. Gen., John H. Banks, Asst. Atty. Gen., Austin, Robert E. Singer, Kamp, Laswell & Pope, Houston, George R. Moorman, Moorman & Tate, Brenham, for appellants.

James G. Ulmer, G. Irvin Terrell, Baker & Botts, Houston, for appellees.

SHANNON, Justice.

The question for decision is whether the order of the Savings and Loan Commissioner of Texas, denying a charter for an association at Hempstead upon the basis of no public need and insufficient volume of business to indicate a profitable operation, was supported by substantial evidence.

John R. McClelland and others, appellees, filed an application with the Commissioner for a charter for a savings and loan association in Hempstead, Waller County, to be designated Texas Savings Association of Waller County, Texas. Nearly eleven months after the hearing, the Commissioner entered his order refusing to issue the charter.

Appellees filed suit in the district court of Travis County to set aside the order of the Commissioner and to require that he issue the charter. The trial court granted the relief sought. We will affirm the judgment of the trial court. Appellants are the Commissioner, South Central Savings Association located in Brenham and Heights Savings Association situated in Houston.

The Commissioner's refusal of appellees' application was grounded upon his negative finding relating to Vernon's Tex.Rev.Civ. Stat.Ann. Art. 852a § 2.08(3). That provision reads as follows:

"(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;"

The trial court concluded that the negative finding of the Commissioner was not supported by substantial evidence.

As often written, the findings of the Savings and Loan Commissioner may not be arbitrary or capricious, but must have support in substantial evidence. Gerst v. Cain, 388 S.W.2d 168 (Tex.1965).

We are mindful of the fact that substantial evidence need not be much evidence, and though "substantial" means more than a mere scintilla, or some evidence, it is certainly less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. Southern Methodist University: Reavley, Substantial Evidence and Insubstantial Review in Texas, 23 Sw. L.J. 239, 241 (1969).

In the case at bar the Commissioner refused to find affirmatively with respect to subsection (3) but instead found that there was no public need for appellees' association and that the volume of business in the community was not such as to indicate a profitable operation. Before the judgment of the trial court may be affirmed, we must hold that the finding made is not supported by substantial evidence, and that the evidence so conclusively required an affirmative finding that the refusal to make it was arbitrary or capricious. Gerst v. Cain, *supra.* We do so hold.

At the Commissioner's hearing, appellees presented twenty-four witnesses who testified in support of the application for the charter,[1] while appellants produced one opposing witness.[2] A resume of the record follows.

Waller County, originally a part of Austin's first colony, was created in 1873 from Austin and Grimes counties, and is situated in southeast Texas near Houston. Hempstead, known to many for years as "Six Shooter Junction," is the county seat. Other settlements in the county are Waller, Brookshire, and Prairie View. The county's population in 1960 was 12,071 and in 1970 it was 14,285, thus showing a higher percentage of population growth than that of the state as a whole.

The economic base of the county is agriculture, and about 85% of its residents depend for a living upon the land. Of the 324,480 acres in the county, 287,496 acres are in farmlands. Rice is the leading cash product, followed by cattle ranching and forage production, peanuts, corn, and grain sorghums. The county's agriculture production has increased as demonstrated by the fact that the annual value of all agricultural products produced was $7,500,000 in 1964, and $11,500,000 in 1970.

The mineral wealth of Waller county, oil and natural gas, has been responsible for the industrialization around Brookshire. Mineral industries receipts in the county increased from $1,142,000 in 1954, to $33,000,000 in 1969.

The total income of Waller County increased from $19,000,000 in 1962, to

1. Those who testified in favor of the application were: Diemer Fife, a farmer and rancher and a director of the proposed association; R. D. Schwarz, a merchant, banker, and rancher, and a director of the proposed association; Dr. A. N. Poindexter, a veterinarian and professor at Prairie View A & M, and a director of the proposed association; Charles J. Crawford, an employee of the San Bernard Electric Co-op; C. C. McMillian, a real estate developer; Jody McCarty, a feed store merchant and a member of the Commissioner's Court of Waller County, and a stockholder of the proposed association; William Lipscomb, a lumber yard merchant; Harry R. Ward, a druggist and stockholder of the proposed association; Jack Taylor, an attorney and county judge; Douglas L. Garrett, Postmaster of Hempstead; Leroy E. Symm, Tax Assessor-Collector of Waller County; Mrs. Peggy Wilkes, a druggist; Dr. Henry C. Chen, an economist and professor at the University of Houston; F. R. Mills, City Secretary of Hempstead; L. E. Hawkins, automobile dealership and councilman of Hempstead; J. M. Josey, an insurance man; Erwin Tiemann, a building contractor; A. L. Hancock, a realtor; William F. Longa, operator of a White's Auto Store; Donald W. Darley, an accountant with Ernst and Ernst; Herman D. Voorhees, an attorney and owner of an abstract company; W. T. Mann, president and director of Citizens State Bank in Hempstead, and a stockholder in the proposed association; David S. Miller, a special representative with Metropolitan Life Insurance Company; and John A. McClelland, an Associate Branch Manager of Metropolitan Life Insurance Company in Houston and a director of the proposed association.

2. The sole witness opposing the application for the charter was Gordon E. Parker, President of appellant, South Central Savings.

$33,400,000 in 1969, or an increase of approximately 75%. The volume of total retail sales in the county expanded from $11,699,000 in 1960, to $19,127,000 in 1970. W. T. Mann, president of Citizens State Bank in Hempstead, testified that deposits in the banks in the county experienced an increase in deposits from $10,304,000 in 1966 to $14,997,000 in 1970. The assessed taxable property located in the three school districts in the county also showed substantial increases, as did pupil enrollment. There are sixteen new subdivisions in the county, fifteen being north of Hempstead.

Hempstead is the principal farm market and shipping center of Waller County. Though seemingly a typical rural county seat, economic conditions in Hempstead and its environs have quickened. The population of Hempstead at the time of the hearing was about 35000 to 3650 persons. Electric power consumption and new utility connections are a fairly reliable source of evidence to indicate growth of a community, and an examination of the record shows that electric power consumption more than doubled in those years between 1961, and 1970, while the water meter connections increased from 1,034 in 1963, to 1,217 in 1970. Of the 159 retail establishments in Waller County, 103 are situated in Hempstead. Several major buildings have been completed recently in Hempstead, including a new bank building, a large nursing home, and a new golfing club. Though the tax rate remained constant, the amount of city tax collections in Hempstead increased from $19,774.49 in 1962, to $24,733.92 in 1970.

Prairie View A & M College is located at Prairie View five miles southeast of Hempstead on U.S. Highway 290. At the time of the hearing, a men's dormitory, a women's dormitory, and a dining hall were being constructed. Dr. Poindexter, a professor at the college, testified that the expected enrollment will increase over the next ten years from 4,000 to 5,900 students. As the college enrollment expands, new homes will have to be built about Prairie View for an increased number of faculty and staff.

Dr. Henry C. Chen, appellees' economist, stated in his economic study that the economy of Waller County, of itself, would grow, but that the most important factor conditioning its growth is its proximity to Houston. Along U.S. 290 just east of the county line in Harris County there are many industrial plants. According to Dr. Chen, the industrial spread is likely to continue to move away from Houston along the highway toward Waller, Prairie View, and Hempstead. Historically, such industrial development has led to the development of many supporting retail and service business establishments, and above all, housing. The northern part of Waller County, it seems, is well situated for residential development, with rolling timbered covered hills, and only thirty to fifty minutes to Houston by U.S. Highway 290.

There is but one savings and loan institution in Waller County, a branch office of Heights Savings Association located at Waller near the Harris County line. There is only one bank in Hempstead, the Citizens State Bank. The nearest savings and loan associations outside the county are South Central at Brenham, First Savings Association at Brenham, and Navasota Federal Savings Association at Navasota, all being at least twenty-two miles from Hempstead.

With respect to a need for a savings association, Diemer Fife testified that he had lived forty years in and around Hempstead and that there always has been a chronic housing shortage. He testified further that area residents had experienced difficulty in obtaining financing. Dr. Poindexter related the difficulty of his church, St. Francis of Assisi Episcopal, in obtaining a building loan in 1970, at savings institutions in both Bryan and Navasota. The church finally obtained financing in Columbus at Colorado Savings and Loan. Dr. Poindexter reasoned that the failure of the first two efforts by the church was caused in part by "tight mon-

ey" and in part by the fact that the church was not located in an area served by a savings and loan association. Dr. Poindexter testified further that persons at Prairie View had to travel outside the area to obtain building loans and to deposit their money in a facility yielding higher interest rates. He said a savings facility at Hempstead would be more accessible than the branch facility in Waller because most persons in Prairie View shop in Hempstead. Other witnesses pointed out the difficulties in having to travel out-of-county to obtain loans and to the fact that money was leaving the county rather than being invested for the benefit of local residents.

Appellees' evidence was that the total amount of loans in Waller County, usually undertaken by savings and loan associations, was $2,827,770 in 1969, and $2,238,125 in 1970. The total amount of this character of loan for the first seven months of 1971 was $1,362,394. The type of lenders making loans in Waller County during those years were banks, savings and loan associations, mortgage companies, government agencies, and "others." In the first seven months of 1971, 20% of all loans were made by savings and loan associations; 45% by banks; 6% by mortgage companies; 1% by government agencies, and 28% by "others." In 1970, only 19% of all loans were made by savings and loan associations. Dr. Chen testified that over the nation in 1970, savings and loan institutions made 65% of the "one to four" family home loans, and in 1969, savings and loan institutions made 59% of those loans. The large volume of loans made by all kinds of lenders in Waller County and the small percentage of those loans made by savings and loan associations would indicate a substantial existing home loan market.

Apropos the proposed association's ability to attract savings, appellees' evidence was that Waller County has an effective buying income of $9,095 per household, and

ranks fourth among ten counties in the greater Houston-Galveston region. There are 3,400 households in the county with a total effective household buying income for 1971 of $34,592,000. Dr. Chen testified that on a national average, 7% of effective buying income is placed in all types of savings opportunities. Dr. Chen was of the opinion that if the proposed association had aggressive management, it would likely gain a substantial portion of those savings.

W. T. Mann, president of the Citizens State Bank in Hempstead, testified that there was a 59.6% increase in time deposits in that bank from 1965 to 1970. In the first seven months of 1971, time deposits had increased by $400,000. These deposits were made even though the bank pays lower interest rates than savings and loan associations, and does not advertise for time money. Mann testified further that his bank would probably lose about $200,000 in time deposits to the proposed association. Mann's opinion was that the proposed association should be able to attract $1,000,000 in savings during its first year of operation.

In this connection, it is of significance that the Waller branch of Heights Savings Association had a projected savings in the first year of operation of $500,000, but the sum actually realized was about $1,000,000.

Mr. R. D. Schwarz, a merchant, banker, and rancher in Hempstead, testified that the proposed association would enjoy $1,000,000 in savings in its first year of operation. His testimony was that much of that sum would be obtained from funds presently in government bonds and from stocks which have performed poorly.

As required by Tex.Rev.Civ.Stat.Ann. Art. 852a, Sec. 11.11(4), the Commissioner filed a statement of underlying facts in support of his findings of no public need and insufficient volume of business to indicate a profitable operation. That statement is set out in the footnote.[3] An exam-

---

3. "The location of the proposed Association is Hempstead, Waller County, Texas. The organizers proposed to locate the office at 841 Twelfth Street, Hempstead, Texas. An ex-

ination of the Commissioner's underlying fact statement shows, in our judgment, that some of the findings support the feasibility of the proposed association. In that category fall the findings that the income rose from $19,000,000 in 1962 to $33,400,000 in 1969; ·that the population of the county increased from approximately 12,000 persons in 1960 to 14,285 in 1970; that much of the evidence pertaining to economic development and growth of Waller County seem to be tied to Houston; and that some evidence pointed up the building around Prairie View A & M. With respect to the last finding, the Commissioner observed that the building at Prairie View would offer "no opportunity to place loans for the commercial building program." The lesson to be learned from the building program at the college is not that the proposed association would place loans in that program, but rather than an expansion of the college would indicate a necessity for additional housing and support services for an increased staff and faculty, and would indicate an increased population base in the area from which savings could be obtained.

Two of the "facts" are not supported by the record: the statement that the Prairie

isting bank building, formerly occupied by Citizens State Bank of Hempstead, is at the site and would be used as the office of the proposed Association. The proposed Association would maintain independent, free standing, ground floor quarters.

Hempstead is located in Waller County, and there are three other cities mentioned frequently during the testimony, the three being Prairie View, which is the location of Prairie View A & M College, Waller and Brookshire, which are near the county line dividing Waller and Harris Counties.

According to the testimony of Dr. Henry C. Chen, the Economist for the Proponent, the majority of the people of Waller County are dependent on agriculture and stock raising for livelihood. The income for the County rose from $19,000,000 in 1962 to $33,400,000 in 1969. This did not take into consideration any inflationary trends but did refer to an increase in population within the County, according to testimony presented. The population of Waller County increased from approximately 12,000 persons in 1960 to 14,285 in 1970. The increased population took into consideration the fact that the enrollment at Prairie View A & M College is in excess of 4,000 persons, and that the college enrollment was not counted in the 1960 census figures. Witness C. C. McMillian, a Houston real estate developer testified that he was the developer of Rolling Hills Colony, and that he had developed some 1,300 lots in the subdivision and had sold under contract or outright sale some 835 of said lots. He further testified that there were only approximately 62 water connections as of the hearing date. Erwin Tremann, a building contractor living in Brenham, testified that he had built around ten homes in Waller County during the year 1970, and probably eight in 1969. He testified that he had no trouble obtaining financing on the homes, but did have trouble on a commercial loan for a funeral home in Waller.

Mr. H. D. Schwarz, a Director and Chairman of the Board of Citizens State Bank, testified that bank deposits in Waller County during the year 1970 increased only $522,000, and that time deposits grew from $1,120,000 in 1965 to $3,082,000 at the present time. The latter figures were also given by Dr. Henry C. Chen. Testimony given by different individuals project that the proposed Association would attract from $500,000 to $1,000,000 in savings for the first year. This projection was expressed by several witnesses, however none came forth with concrete examples or logical reasons to support such projection. Much of the evidence pertaining to economic development and growth seemed to be tied to Houston and the metropolitan area around Houston. Some evidence pointed up the building around Prairie View A & M College which is state supported, and offers no opportunity to place loans for the commercial building program. There is no apparent source for increased savings in the area, and the growth trend is not sufficient to support a savings and loan association. Additionally, there is not sufficient evidence to indicate a volume of business necessary to support a profitable operation within a reasonable period of time.

All of the foregoing evidence, as well as the evidence submitted at the hearing, including all exhibits, maps and reports show that there is not a public need for a savings and loan chartered facility to be based at Hempstead, Waller County, Texas, and that the volume of business in the community in which such facility would conduct its business is not such as would indicate a profitable operation. The operation of a facility in Hempstead, Waller County, Texas, would not unduly harm an existing association. For the reasons stated herein the application by TEXAS SAVINGS ASSOCIATION OF WALLER COUNTY for a charter will not be approved."

View college students were not counted in the 1960 Federal census, and that Dr. Chen did not take into consideration any inflationary trends in reporting the increase in county income.

In an effort to support the Commissioner's order, appellants champion evidence other than that found in the Commissioner's statement of underlying facts. This evidence is largely fragmentary in nature and was adduced on cross-examination of several of appellee's witnesses, such as Fife, Tiemann (spelled Tremann in the record), and Hancock. A summary of some of this evidence follows.

Although Fife did testify that he thought difficulty in borrowing money for building houses was prevalent throughout the nation, he made no pretense of being familiar with national housing conditions. He was familiar, however, with local housing and said that there had been a chronic housing shortage in Hempstead for forty years.

Erwin Tiemann, a builder in Brenham, did indeed testify that he had plenty of houses to build. He testified further that he was interested in speculative building in Waller County provided that financing was readily available for such building. In addition, he said that financing for building in Waller County was not available from savings institutions in surrounding areas because those institutions wanted to keep their money in their own areas.

It is true that A. L. Hancock testified on cross-examination that he had experienced no difficulty in financing his real estate transactions, but he also testified that his clients had obtained financing only by going to Houston.

Appellants say that the fifteen new subdivisions in Waller County are largely undeveloped. Appellants claim that the lack of development of the subdivisions was not due to a lack of financing and that the

subdivisions are not occupied by permanent residents. Several witnesses testified as to the need for housing in the county, particularly in Hempstead and Prairie View. Charles J. Crawford testified that houses on a number of the lots have not been built because of a lack of financing. He also said that though many of the houses began as weekend homes, as the owners retire, those houses have become permanent homes when owners retire and move to them.

Appellants also question the expertise of appellees' economist, Chen, and doubt the reliability of some of his sources of information for his economic study. In this connection, we observe that appellants did not place into evidence any economic study or independent expert testimony from which the Commissioner might have compared and tested Chen's figures and conclusions.

■ From a review of the record, as a whole, we are of the opinion that the judgment of the trial court is correct and that the order of the Savings and Loan Commissioner is not supported by substantial evidence.

Appellants also claim that the trial court erred in failing "to apply" the doctrine of *res judicata* to bar appellees' charter. The basis for appellants' claim is that in 1969, the Commissioner denied an application by Community Savings and Loan Association of College Station for a branch office in Hempstead upon the basis that there was no public need.

■ Without passing on the applicability of the doctrine of *res judicata* to the facts in this case, we will overrule appellants' point for the reason that appellants did not plead *res judicata*. Texas Rules of Civil Procedure 94.

The judgment is affirmed.

Affirmed.